## TUFTS *v.* TUFTS.

EQUITY WILL INTERPOSE TO AVOID A DEED procured by one party from another, and executed under a mistake of fact as to what the contents of the deed were, where the mistake arises out of the false and fraudulent representations of the grantee therein.

APPEAL from the third district court. The opinion states the facts.

*Dickson & Varian*, and *Sheeks & Rawlins*, for the appellant.

This action was brought to procure the cancellation of a certain deed purporting to be a conveyance by plaintiff to defendant of certain lands.

There is one case attempted to be stated in the bill as the ground upon which the relief is sought; quite a different case is attempted to be made by the evidence at the trial; while the case made by the findings is neither based upon that stated in the bill nor supported by the testimony.

In the complaint the sole ground of relief attempted to be set up is that of mistake on plaintiff's part in putting her hand to the deed in question, such mistake resulting from the fraudulent conduct of the defendant.

The case relied upon at the trial is one of mistake on plaintiff's part, resulting from her own inexcusable negligence, unconnected with any fact or circumstance which even so much as tends to show fraud of any character, or in any respect, on defendant's part. Moreover, the mistake set up by plaintiff in her complaint and the mistake she testified to at the trial are two separate and distinct things.

The complaint does not set up that the relation of mother and son existed between plaintiff and defendant, it does not charge that there was any relation of trust and confidence between the parties; it does not appear therefrom that plaintiff was at all enfeebled in mind, or in any way incapacitated; for aught that is there shown, the parties were as strangers to each other, dealing at arm's-length.

The case made by the findings is, that the relation of mother and son existed between the parties, that plaintiff was aged and infirm, that she reposed great trust and confidence in defendant, that defendant was intrusted by plaintiff to have prepared for her signature a certain instrument— differing entirely from that which the complaint alleges he was so to have prepared—and that, abusing the trust and confidence reposed in him, and seeking to cheat and defraud her, he fraudulently prepared and had substituted and placed be-

fore her, for her signature, another paper, to wit, the deed in question, representing it to be the instrument he had been directed to prepare, thereby procuring her signature to the deed.

Without waiving the point, it may be needless to inquire whether or not the complaint states a cause of action, for certain it is that the evidence does not sustain its allegations.

To authorize the cancellation of a deed on the ground that the same was executed by mistake, two things are indispensably requisite: 1. The mistake must be established by evidence free from suspicion—clear, satisfactory, and convincing —it must be made to appear beyond a reasonable doubt; 2. It must be shown that the mistake was not the result of gross folly or [neglect on the part of him who seeks to be relieved from it.

As to the character and degree of evidence necessary to establish the fact of mistake, we invite attention to the following authorities, all of which bear more or less directly upon the question: 1 Story's Eq. Jur., sec. 157, and cases there cited; 2 Whart. Ev., sec. 932, note 4, 934, and 1243; *Rent* v. *Lasley et al.*, 24 Wis. 654; *Tucker* v. *Madden*, 44 Me. 206; *Lake* v. *Meacham et al.*, 13 Wis. 396; *Hileman* v. *Wright*, 9 Ind. 126; *Ruffner* v. *McConnell*, 17 Ill. 212; *Selby* v. *Givins*, 12 Id. 69; *Gillespie* v. *Moon*, 2 Johns. Ch. 595; *Lyman* v. *United Ins. Co.*, Id. 630; *Nevins* v. *Dunlap*, 33 N. Y. 676; *Harris* v. *Reese*, 5 Gill, 212; *Henley* v. *Hotaling*, 41 Cal. 22; *Vigel* v. *Hopp*, 104 U. S. 441; *Yocum* v. *Foreman*, 14 Bush, 494; *Sawyer et al.* v. *Hovey*, 3 Allen, 331; *Graham* v. *Berryman*, 19 N. J. Eq. 29.

As to gross negligence on the part of complainant, leading to the mistake, being ground for refusing relief, we cite the following cases: *Thoroughood's Case*, 2 Co. 435; *Pindar* v. *The Res. Ins. Co.*, 47 N. Y. 114; *Greenfield's Estate*, 14 Pa. St. 489; 2 Lead. Cas. Eq., pt. 1, p. 955; *Brown* v. *Fagan*, 71 Mo. 563; *Wilthaus* v. *Schack*, 57 How. 310; *Voorhis* v. *Murphy*, 26 N. J. Eq. 434.

There is no presumption against the validity of the deed arising from the situation or relation of the parties; on the contrary, the deed from parent to child is looked upon with a favorable eye: Note to *Ferguson* v. *Lowery*, 25 Am. Rep. 728–730.

The findings as to the relations of the parties, and as to the fact of plaintiff reposing trust and confidence in the defendant, are without the issues made by the pleadings, and must therefore be disregarded: *Stevens* v. *Poole*, 67 Me. 217; *Green* v. *Chandler*, 54 Cal. 626; *Devoe* v. *Devoe*, 51 Id. 543; *Morenhart* v. *Barron*, 42 Id. 591.

*Arthur Brown*, for the respondent.

Counsel in their brief, and in their argument of the motion for new trial, claim that said complaint sets forth no adequate cause for relief under the equity practice. I never could understand their position; not one of their cases begins to sustain it. It is a fundamental rule of equity, that where one person has been misled into signing a different paper from that which such person supposed he was signing, and another person, so misleading him, has taken advantage of it, he can either reform or set aside the instrument entirely. It is not necessary to say that the mere mistake must be of both parties. A mistake of one party, of which the other knows and takes advantage, is a mistake, and a fraud also. The complaint states a clear case entitling the plaintiff to the relief of this court, in the form of a rescission. I refer to the following authorities: 44 N. Y. 525; 55 N. Y. 240; 44 Cal. 230; *Eaton* v. *Eaton*, 37 N. J. L. 108; *Case* v. *Case*, 26 Mich. 484.

The defendant's own testimony shows that from his situation towards his mother, and his relationship to her, the burden of proof is changed from that stated in the brief of appellant, by which it is said that the plaintiff must make out a case beyond a reasonable doubt, and a little more than the opposite, to wit: that the defendant must show by a preponderance of proof that he acquired the property in good faith, fairly, and that the plaintiff knew what she was about when she executed the deed, and that the instrument so executed was what it was represented to be, and that the proceedings upon his part were entirely above-board and honest: *Stiles* v. *Stiles*, 14 Mich. 72.

It is immaterial whether we rely upon the relationship as the cause of action, or prove it as a method of disposing of

the defense.    The cause of action is sufficient if the plaintiff did not know what paper she was executing, and did not intend to make a gift of the property.    The relationship was admissible to show the probabilities of the defense and to disprove the denials of the answer.    It is useless to discuss whether it was necessary to allege this relationship; our cause of action does not depend upon it.    It was material to the issue to show the circumstances, by which the defendant procured the deed from plaintiff without her knowledge.    Being once in the case, we may consider it for the purpose of discrediting and disproving the defense : *Case* v. *Case*, 26 Mich. 484.

TWISS, J.:

This is a suit to annul and set aside a warranty deed made by Elmira P. Tufts to the defendant, Elbridge Tufts, on the twenty-sixth day of June, 1882, of certain property therein described, situated in Salt Lake City, known as the Colorado House.    Since the trial in the district court Elmira P. Tufts, the original plaintiff, has died, and the present plaintiff, Don C. Tufts, has been appointed administrator of her estate, and has duly qualified as such.

The complaint contains allegations to the effect that the defendant had proposed to the deceased plaintiff that they would mutually enter into an agreement that she should thereby convey to the defendant the property in controversy, and that he should convey to her all of his real estate in Salt Lake City, " with the provision in said agreement that whosoever of said plaintiff or defendant dies first, the survivor should take possession of, have, own, and hold to their own use and benefit the whole real estate owned by both, and no title was to pass from either until his or her death, as the case might be." That the defendant in the month of June, 1882, further promised the deceased that if she would execute an agreement, which he then had and read to her, in effect similar to the proposed agreement above described, he would build for the plaintiff, at his own expense, a nice brick house upon a lot of land belonging to him, and adjoining the lot described or conveyed in said deed, and give her a life lease of the same, " to use for her own benefit," free from any and all expenses

to her during her natural life, the said brick building to be commenced by defendant as soon as the plaintiff would sign said written agreement at the time drawn up by him.

"Plaintiff further alleges that all said talk and actions of defendant was for the fraudulent design of procuring plaintiff's said real estate as his own property, and that he never intended to, and never at any time did, execute such an agreement, but did intend to obtain a warranty deed and the possession of said plaintiff's real estate, without giving her any consideration therefor. Plaintiff alleges that, relying upon the statements and agreements of said defendant, she signed and executed what she supposed to be said agreement as had been theretofore, to wit, June 26, 1882, drawn by the defendant and read to her by said defendant as embodying their said intentions, but which she has since learned was a warranty deed from said plaintiff to said defendant conveying said real estate of plaintiff hereinbefore described from said plaintiff to said defendant.

"And that plaintiff, believing and relying upon the false and fraudulent statements then made by defendant, and believing said paper which she was about to sign to be the agreement or will which had been theretofore read to her, and written by defendant June 26, 1882, then signed and executed said warranty deed."

That defendant never paid any consideration for said warranty deed; that he obtained the same from her without her will or consent of any kind whatever, and caused the same to be recorded in the office of the recorder for Salt Lake county; that since discovering the fraud of said false deed she has made demand upon said defendant to reconvey to plaintiff her said land and premises, which defendant refused to do; that the deceased was at the commencement of this suit and always had been the lawful owner of said real estate.

That "defendant has not commenced to build the brick house on his said lot, as he had promised plaintiff to do, nor given nor executed any agreement giving the plaintiff a life lease on any of his land, or on the property heretofore owned by the plaintiff as aforesaid," and prays judgment that the said warranty deed from plaintiff to defendant be decreed to be fraudulent, null, and void, and that the defendant be re-

quired by the decree of this court to convey to said plaintiff all right, title, and interest he may have acquired in said real estate, and for cost of suit.

The answer denies every material allegation contained in the complaint.

Upon the trial before the court without a jury, there were some six or seven witnesses upon one side and the other, besides the deceased plaintiff and the defendant. The findings of facts and conclusions of law by the court are as follows:

"1. That on the fifth day of July, 1882, and for a long time prior thereto, the plaintiff had been the owner in fee simple, and in possession and entitled to the possession, of the following-described tract of land as set forth in the complaint, to wit: Being a part of lot five (5), in block fifty-three (53), of Plat A, of Salt Lake City survey, bounded and described as follows. (Here follows a description of the land.)

"2. That at the date aforesaid the defendant sustained towards the plaintiff the relation of son to mother; that the plaintiff was seventy years of age; that the plaintiff reposed great confidence and trust in the defendant, who had been theretofore attending to business for her, and in former years they had lived together even after the defendant became of age.

"3. That on the said fifth day of July, 1882, the defendant procured from the plaintiff an absolute deed of said described tract of land, which deed was afterwards, on the tenth day of July, 1882, recorded in the office of the county recorder of Salt Lake county, Utah, in book F of deeds and transfers, pages 575 and 576.

"4. That at the time of the execution of said deed, plaintiff did not know that it was a deed of her property in question, but believed it to be a life lease of property belonging to the defendant, upon which she was agreeing to assist in building a home; that prior to the time of the execution of said deed there had been negotiations between the said plaintiff and the said defendant, to the effect that the plaintiff should assist defendant with money to build a house upon lands of his own, and that after such negotiations had taken place she directed defendant to prepare the proper papers; that defendant, instead of preparing the papers directed by plaintiff, prepared

a warranty deed of the land in question, and procured the signature of the plaintiff thereto; that the same was not read to the plaintiff, and she did not know the contents thereof; that there was no consideration for the same passed between the parties, and that the plaintiff signed the same under the belief that it was a paper relative to a life lease to her of the said land of the defendant upon which said building was to be erected; that the signature of the plaintiff to the said deed was procured by the fraud of the defendant; that the defendant never has attempted to build any such house as was contemplated by the agreement for the life lease.

"5. That the plaintiff, since the execution of the said deed, has remained in the possession and control of the property in question; that prior to the commencement of this suit the plaintiff caused demand to be made upon the defendant that he reconvey the property to her.

### "CONCLUSION OF LAW.

"I find as conclusion of law that said deed set forth in the complaint, from the plaintiff to the defendant, for the land aforesaid, was procured by fraud, and that the same should be canceled and set aside; that the plaintiff is entitled to the possession of and title to the said land and premises; that the plaintiff is entitled to a decree that the said defendant do, within five days after demand upon him, execute and deliver to the plaintiff a deed duly acknowledged of the aforesaid premises; that in case of his failure so to do, such order and decree shall stand as a cancellation of the said deed from the plaintiff to the defendant; that the same is canceled, set aside, and declared null and void; that the plaintiff is entitled to recover of the defendant her costs in this behalf expended, and judgment is hereby ordered accordingly."

The law presumes that every person who puts his name to and executes a deed knows the contents of the instrument to which he puts his seal, and before some magistrate acknowledges with solemnity the instrument as his act and deed; and that he knows the legal effect of it. But in a case where it is charged that a deed is executed by reason of false and fraudulent representations, as to its contents, and that it was falsely read to him, and that by reason of such representa-

tions and reading he executed it in ignorance of its contents, then the validity of such deed may be inquired into, and impeached by oral testimony; and if it is sufficient in strength to carry conviction to the mind of the jury, or of the court sitting as a jury, of the truth of the charge, the effect may be that the solemn deed of the party be annulled and held for naught: *Eaton* v. *Eaton*, 37 N. J. L. 108.

This principle of law is universally recognized, and is necessary to protect the unwary, weak, or ignorant from the cupidity of the unscrupulous sharper, whose efforts to enrich himself at the loss or ruin of others is restrained only by want of opportunity and a wholesome sense of the power or efficacy of the law, to protect and avenge the injuries, redress his wrongs, and punish the guilty.

We are all of the opinion that the court below could upon the testimony before it find for the plaintiff upon all of the issues, and that the record shows no error, and therefore the judgment of the district court is affirmed.

HUNTER, C. J., and EMERSON, J., concurred.